**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NAABANI TWIN STARS, LLC and
TWIN STARS, LTD.,

      Plaintiffs,

v.                                      No. CIV 19-00197 RB/JHR

TRAVELERS COMPANIES, INC., and
ST. PAUL FIRE & MARINE INSURANCE COMPANY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

On July 17, 2016, a water pipe broke under the parking lot adjacent to a building owned by Plaintiffs Naabani Twin Stars, LLC and Twin Stars, Ltd. The water caused the soil to collapse, which in turn caused damage to Plaintiffs' building. Plaintiffs, who were insured under a policy with Defendant St. Paul Fire & Marine Insurance Company, filed a claim. Defendant denied coverage.

Plaintiffs claim the damage suffered amounted to a "collapse" as defined by the insurance policy. Defendant contends that the losses fall under the policy's exclusion for "Earth movement." Plaintiffs filed a declaratory judgment action in state court pursuant to N.M. Stat. Ann. § 44-6-4. Defendant removed the case to this Court and now moves for summary judgment. For the reasons discussed below, the Court will grant summary judgment in favor of Defendant and dismiss Plaintiffs' claims.

## I.  Legal Standards

### A.    Standard for Motions for Summary Judgment

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* (quotation and citation omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in their favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

### B.   Relevant Local Rules

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56.1(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* In return, the non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist." *Id.* The non-movant must number each fact in dispute, "must

2

refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." *Id.*

## II.   Statement of Facts[1]

### A.  Undisputed Facts

Naabani Twin Stars, LLC is the owner of property located at 100 Iowa, Bloomfield, NM 87413. (Doc. 41-2 at 2.) The property was built in 2006 and occupied in May 2007. (Doc. 38-B at 4.) On July 17, 2016, an underground water line ruptured on the property. (Doc. 1-1 at 3.) Plaintiffs state that the ruptured water line caused a collapse under the parking lot, which in turn caused land beneath the building to change positions and damage the building. (*Id.*) On July 18, 2016, Plaintiffs hired Geomat, Inc., a geotechnical consultant, to inspect their building. (Doc. 41-5 at 2.) Geomat found that the "excessive movement of the southwestern portion of the building . . . [was] likely due to additional compression of the supporting soils due to water infiltration from the leaking waterline." (Doc. 41-1 at 2.) Plaintiffs hired a second consultant, Robert Prindle, who later agreed with Geomat's conclusions stating, "Geomat correctly concluded that a material change in site conditions had occurred as a direct result of the rupture of the water pipe in the south parking lot, and that those changes directly affected the settlement of the south portion of the building." (Doc. 38-C at 5.) Mr. Prindle also specified that "the effects of settling caused by the water pipe rupture extend . . . approximately 35 to 45 feet northward from the south wall of the office portion of the building[,] . . . approximately 35 feet northward from the south wall of the reception area in the parts portion of the building[,] . . . and approximately 20 feet northward from the south wall of the

---

[1] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to Plaintiffs. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The facts are undisputed unless noted.

shop portion of the building." (*Id*. at 8.) The damage to the building included: cracks in the floor, buckling of the building's exterior, breaking of sheetrock, and the inability to close and open doors. (Doc. 41-5 at 2.) This damage put stress on the fire suppression water line, causing the line to be in danger of breaking. Because of the stress put on the fire suppression water line, Plaintiffs turned off the fire suppression system. (*Id*. at 3.) Because the fire suppression system was turned off, the Fire Marshall required that the gas line be turned off as well. (*Id*.) This kept the building from being heated. (*Id*.) After repairs were made, the gas and fire suppression lines were reconnected. These repairs allowed Plaintiffs to continue using the building. (*Id*.)

As noted above, Plaintiffs filed a claim with Defendant under the insurance policy. (Doc. 38-F at 2.) Ultimately, Defendant denied coverage and explained its reasoning in a letter dated September 29, 2016. (*Id*.) Defendant's letter advised Plaintiffs that:

> In the reporting of the loss, it was reported that the damage was extensive to the point that there was fear of the possible collapse of the structure. It was also reported that the settlement was a result of the parking lot plumbing leak. . . .
>
> . . .The plumbing leak in the parking lot was located approximately sixty feet from the nearest wall of the building. Evidence reviewed finds that the building settlement is as a result of subsurface movement.
>
> As noted in the policy language cited in the section above, our inspection found the building was not in a state of collapse as defined under the policy and therefore there is no coverage under the peril of collapse.
>
> Furthermore the policy excludes the damage found to the building under several exclusions, including, but not limited to earth movement and settling. Other exclusions may apply as well.

(Doc. 38-F 3–4.) Plaintiffs dispute Defendant's denial of coverage and claim they are covered under the policy's "collapse" section, but Defendant maintains that coverage is barred by the

"Earth movement" exclusion.[2]

### B. Policy Provisions

The Court will detail the pertinent sections of the policy below.

**What This Agreement Covers**
The description of property covered, the limit of coverage, and other terms and conditions are shown in the Coverage Summary.

(Doc. 38-A at 3.)

**Covered Causes Of Loss**
We'll protect covered property against risks of direct physical loss or damage except as indicated in the Exclusions - Losses We Won't Cover section.

(*Id.*)

**Additional Coverages**
All of the following additional coverages are included when either building or business personal property coverage has been purchased and is shown in the Coverage Summary.[3] Unless otherwise indicated, these additional coverages are not in addition to the limits of coverage for building or business personal property shown in the Coverage Summary.

(*Id.* at 5.)

**Collapse**
We'll cover direct physical loss of or damage to covered property, except that described in the Property with limited collapse coverage section, caused by collapse when the collapse is caused by any  of the following:
- Fire, smoke, lightning, wind, hail, explosion, vehicles, aircraft, vandalism, malicious mischief, civil disturbance, riot, sprinkler leakage, sinkhole collapse, or volcanic action.
- Building glass breakage, falling objects, weight of ice, weight of snow, or weight of sleet, or water damage.
- Decay that's hidden from view, unless the presence of such decay is known or should have been known to an insured prior to collapse.
- Insect or vermin damage that's hidden from view, unless the presence of such damage is known or should have been known to an insured prior to collapse.
- Weight of people, weight of business personal property, or weight of other personal property.

---

[2] Plaintiffs dispute that Defendant declined coverage based on the "Earth movement" exclusion. They contend that Defendant used the "Earth movement" exclusion as pretext to avoid determining what damages were caused by the water line break.

[3] The Coverage Summary indicates that Plaintiffs have property coverage, and therefore, they have coverage under the "Additional Coverages" section. (*See* Docs. 54-1 at 54–54-2 at 8.)

- Weight of rain that collects on a roof.
- Use of defective material or methods in construction, remodeling, or renovation, if the collapse occurs before such work is completed.

(*Id*. at 5–6.)

> ***Collapse*** means an abrupt falling down or caving in of a building or structure, or any part of a building or structure, with the result that the building, or part of the building or structure, cannot be occupied for its intended purpose.
>
> We won't consider any of the following to be in a state of collapse:
> - A building or structure, or any part of a building or structure, that's in danger of falling down or caving in.
> - A part of a building or structure that's standing, even if it has separated from another part of the building or structure.
> - A building or structure that's standing or any part of a building or structure that's standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

(*Id*. at 6.)

> ***Water damage*** means the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance, other than a sump system, containing water or steam.

(*Id*.)

> **Exclusions – Losses We Won't Cover**
> When we use the word loss in this section we also mean damage.

(Doc. 54-2 at 22.)

> **Collapse.** We won't cover loss caused by or resulting from collapse. We also won't cover loss caused by or resulting from the abrupt falling down or caving in of business personal property or any portion of a covered building or structure.
>
> But this exclusion doesn't apply to the Collapse additional coverage.

(*Id*. at 22–23.)

> **Earth movement.** We won't cover loss caused directly or indirectly by any earth movement, whether natural or man-made, including the following:
> - Earthquake, including any earth sinking, rising, or shifting related to such event.
> - Landslide, including any earth sinking, rising, or shifting related to such event.
> - Mine subsidence.

- Earth sinking, rising, or shifting, including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Earth sinking doesn't include sinkhole collapse.
-  Volcanic eruption, explosion, or effusion.

    Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    However, we'll cover loss caused by sinkhole collapse. If earthquake, landslide, mine subsidence, or earth sinking, rising, or shifting results in fire or explosion, we'll pay for that resulting loss.

(*Id*. at 23.)

    **Settling, smog.** We won't cover loss caused by or resulting from:
- settling, cracking, bulging, shrinking, or expansion . . . .

    (*Id*. at 26.)

## III.  Analysis

Defendant argues that it is entitled to summary judgment because the policy expressly excludes coverage for "Earth movement," including "soil conditions which cause settling, cracking, or other disarrangement of foundations." (Doc. 38 at 16.) Because the damage to Plaintiffs' property was caused by "Earth movement," Defendant contends there is no coverage, and therefore, the remaining claims should be dismissed.[4] (Doc. 38 at 23.) For the reasons detailed below, the Court finds that Plaintiffs do not have coverage under the policy's "collapse" section, and the "Earth movement" section prevents coverage. Consequently, the Court grants summary judgment in favor of Defendant.[5]

---

[4] Defendant also argues that the policy does not provide coverage for paved surfaces, but Plaintiffs concede that "[t]he damages sought . . . are those relating to the building, not the parking lot." Plaintiffs argue they should receive coverage if the parking lot is damaged during the process of repairing the building, but Plaintiffs cite no section of the policy to support this claim. Therefore, the Court agrees that the policy does not provide coverage for paved surfaces. (Doc. 38 at 15.)

[5] The Court takes notice that Plaintiffs seek "to only . . . recover for the damage to the building resulting from the water line burst that occurred on July 17, 2016." (Doc. 41 at 16.) Therefore, the Court will only analyze Plaintiffs' claims and damages sought as they pertain to events that occurred on or after the July 17 water line rupture.

**A. The plain language of the policy does not support a finding that there was a collapse.**

Defendant argues it is entitled to Summary Judgment because "the policy expressly excludes coverage for 'Earth [m]ovement' . . . ." (Doc. 38 at 16.) Plaintiffs primarily argue that the damage to their building is covered as a "collapse" under the "Additional Coverage" section, which takes precedence over the "Earth movement" exclusion. (Doc. 41 at 13.) But Plaintiffs are missing the boat by making this the heart of their argument. Though the policy is convoluted, upon careful review Plaintiffs would see they have "collapse" coverage as defined by the policy. The Court will explain.

The "Covered Causes Of Loss" section provides: "We'll protect covered property against risks of direct physical loss or damage *except as indicated in the Exclusions* - Losses We Won't Cover section." (Doc. 38-A at 3 (emphasis added).) Coverages excluded include "Earth movement" and "Collapse." However, the "Collapse" exclusion states, "this exclusion *doesn't apply to the Collapse additional coverage*." (Doc. 54-2 at 23 (emphasis added).) The "Additional Coverages" section states: "All of the following coverages are included *when either building or business personal property coverage has been purchased* and is shown in the Coverage Summary . . . Collapse." (Doc. 38-A at 5 (emphasis added).) The Coverage Summary indicates that Plaintiffs have property coverage. (*See* Doc. 54-1 at 54–54-2 at 8.) Therefore, Plaintiffs have access to "Additional Coverages," including coverage for a "Collapse." Knowing this, it is inconsequential whether the exclusions or additional coverages takes precedence. The heart of the issue is whether the damages to Plaintiffs' building fall under the policy's definition of "collapse." Accordingly, before the Court proceeds to other issues, it must address this question.

To determine whether damage to the building can be considered a "collapse" under the "Additional Coverages" section, the Court turns to the language of the policy. Plaintiffs state that

the damage to their building should be considered a "collapse" because the water line break caused

the building to "abruptly shift, resulting in . . . structural welds [breaking], [the creation of] large

cracks, [and] doors that would not open or close . . . ." (Doc. 41 at 19.) Plaintiffs assert that the

damages rendered the building inoperable:

> Once the fire suppression system was turned off, the Fire Marshall required the gas
> supply to the building to be turned off. Without operable gas lines, the building
> could not be heated and thus would not be occupied for it intended purpose when
> the weather turned cold. Similarly, without operable fire suppression, the building
> could not be used for it intended purposes of office space and heavy equipment
> repair work due to the fire code and safety concerns.

(Doc. 41 at 19–20.) Conversely, Defendant states that "[t]here is . . . no evidence in the record that

the insured building suffered an actual or abrupt 'collapse' as defined in the Policy." (Doc. 44 at

8.) Defendant contends that Plaintiffs are trying to equate the inoperability of the building to a

collapse, but that inoperability does not show a "falling down or caving in," as the policy defines.

Since the parties disagree on how to interpret and apply the definition of "collapse," the

Court must determine if it is ambiguous. Because this Court is sitting in diversity jurisdiction, the

substantive law governing this case is that of New Mexico. *Racher v. Westlake Nursing Home Ltd.

P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). "When the federal courts are called upon to interpret

state law, the federal court must look to rulings of the highest state court, and, if no such rulings

exist, must endeavor to predict how that high court would rule." *Amparan v. Lake Powell Car

Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *Stickley v. State Farm Mut. Auto. Ins.

Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)). In New Mexico, "[t]he construction of an insurance

policy is a matter of law which can be decided on summary judgment." *Winters v. Charter Oak

Fire Ins. Co.*, 4 F. Supp. 2d 1288, 1291 (D.N.M. 1998) (citing *Adams-Arapahoe Joint Sch. Dist.

v. Cont'l Ins. Cos.*, 891 F.2d 772, 774 (10th Cir. 1989)) (subsequent citation omitted). "New Mexico

law treats an insurance policy as an ordinary contract to be construed according to customary

principles of contract interpretation." *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013) (citing *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997)); *see also Safeco Ins. Co. of Am., Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977) (stating that insurance policies "must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end") (citation omitted). "[T]he court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *Lucero, Jr. v. Northland Ins. Co.*, 346 P.3d 1154, 1156 (N.M. 2015) (quoting *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 746 P.2d 1109, 1111 (N.M 1987)). But if the Court finds that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists." *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993) (citing *Vickers v. N. Am. Land Dev., Inc.*, 607 P.2d 603, 606 (N.M. 1980)). If a Court finds that an ambiguity exists, the resolution of that ambiguity becomes a question of fact for a jury and summary judgment is improper. *Id.*

On the other hand, "[i]f the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." *Id* (citing *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 244 (N.M 1991)). Therefore, if a court finds the language of a contract to be unambiguous, it must enforce the language as written. *Clark v. Terry's Serv. Ctr.*, No. 32,507, 2013 WL 4531919, at *1 (N.M. Ct. App. Feb. 20, 2013); *see also Espinosa v. United of Omaha Life Ins. Co.*, 137 P.3d 631, 639 (N.M. Ct. App. 2006) ("When a contract or agreement is unambiguous, we interpret the meaning of the document and the intent of the parties according to the clear language of the document, and we enforce the contract or agreement as written.") (citation omitted); *Montoya v. Villa Linda Mall, Ltd.*, 793 P.2d 258, 259 (N.M. 1990) ("It is black letter law that, absent an ambiguity, a court is bound to interpret and

enforce a contract's clear language and cannot create a new agreement for the parties.") (citation omitted).

The Court finds that the definition of "collapse" is clear and unambiguous. The policy covers "direct physical loss of or damage to covered property . . . caused by collapse." (Doc. 38-A at 5.) It defines "collapse" as "an abrupt falling down or caving in of a building or structure, or any part of a building or structure, with the result that the building, or part of the building or structure, cannot be occupied for its intended purpose." (*Id*. at 6.) The definition explicitly excludes both "[a] building or structure, or any part of a building or structure, that's in danger of falling down or caving in," and "[a] building or structure that's standing or any part of a building or structure that's standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion." (*Id*.) Although the term "collapse" might appear ambiguous standing alone, the policy's definition is plain and clear. There is, therefore, nothing to construe or interpret. "Absent any ambiguity, the provisions of the contract need only be applied." *McKinney v. Davis*, 503 P.2d 332, 333 (N.M. 1972).

Applying the definition to the present facts, the Court cannot find any evidence to show that Plaintiffs' building suffered a "collapse" as defined in the policy. Though Plaintiffs argue that their building's structural integrity was damaged,[6] the Court finds these damages to fall squarely within the definition's exclusion, which does not cover standing buildings with "cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion." (Doc. 38-A at 6.) Plaintiff does not identify any evidence of the building "falling down or caving in," but only shows tenable evidence that the building might be "in danger of falling down or caving in." (*Id*.) These issues are outside the policy's definition of "collapse."

---

[6] Plaintiffs claim the water line break caused the building to "abruptly shift, resulting in . . . structural welds to break, large cracks, doors that would not open or close, and stress on fire suppression lines." (Doc. 41 at 19.)

Plaintiffs then try to circumvent the definition of "collapse" by relying on a chain of causation to conclude that their building was inoperable. They state that the water leak caused stress on the fire suppression line, which caused the fire suppression system to be turned off, which caused the gas supply to be turned off, which caused the building to not be heated, which caused the building to not be occupied when it was cold, which caused the building to be inoperable. (Doc. 41 at 19–20.) Again, these issues do not establish "an abrupt falling down or caving in of" the building. Essentially, Plaintiffs try to argue for "collapse" coverage by focusing on the result of the "collapse," which is that the building "cannot be occupied for its intended purpose." (Doc. 38-A at 6.) However, this conclusion ignores the plain language of the policy and renders the actual definition— "an abrupt falling down or caving in"— meaningless. In the end, Plaintiffs are trying to fit a square peg in a round hole.

Plaintiffs also cite several cases to support the foregoing arguments, but the Court does not find these cases persuasive. The damages dealt with in Plaintiff's authority were much greater than those in the present facts. (Doc. 41 at 20–22 (discussing *Hoban v. Nova Cas. Co.*, 335 F. Supp. 3d 1192, 1196 (E.D. Cal. 2018) (roof truss failures "caused ceiling tiles and a layer of insulation to fall" and resulted in a lowering of the ceiling height); *Malbco Holdings, LLC v. AMCO Ins. Co.*, 629 F.Supp.2d 1185, 1191 (D. Or. 2009) (failure of floor truss system projected to cause "areas in and around the pool area [to] completely fall to the ground"); *Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So. 3d 74, 78 (Fla. Dist. Ct. App. 2012) (failure of roof truss system caused roof to "suddenly fall down" twelve inches).) Plaintiffs also cite one New Mexico case for support— *Morton v. Great American Ins. Co.*, 419 P.2d 239, 2442 (N.M. 1966). (Doc. 41 at 20.) The Court finds *Morton* distinguishable from the present facts because in that case, the policy did not expressly define "collapse." In this case, however, the policy unambiguously defines

"collapse." Based upon the preceding arguments, the Court determines that Plaintiffs' building is not in a state of collapse, and therefore, Plaintiffs do not have coverage.

**B.      The anti-concurrent causation clause controls.**

Plaintiffs claim that the ruptured water pipe was the efficient proximate cause[7] of the damage to the building. However, Defendants argue that the contract's anti-concurrent causation (ACC) clause[8] displaces any benefit Plaintiffs might receive from the efficient proximate cause doctrine. The Court is not aware of any New Mexico decisions addressing ACC clauses. Therefore, the Court must "endeavor to predict how [the New Mexico Supreme C]ourt would rule." *Nelson v. United States*, 915 F.3d 1243, 1248 (10th Cir. 2019) (quotation omitted). The Court does this by "seek[ing] guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Patterson v. Powder Monarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)).

The Court finds the ACC clause controls for several reasons.[9] First, there is no bar to Defendant's use of the ACC clause, because New Mexico has not adopted the efficient proximate cause doctrine as a matter of public policy. *Leonard*, 499 F.3d at 435. Most jurisdictions without a formal rule of law on ACC enforceability favor enforcement. Joshua T. Carback, *Anti-Concurrent Causation Clauses in Insurance Contracts: The State of the Law in 2017*, 19 TENN. J.

---

[7] The efficient proximate cause doctrine allows courts to "determine which among concurrent causes of a loss was the most substantial or responsible . . . ." Joshua T. Carback, *Anti-Concurrent Causation Clauses in Insurance Contracts: The State of the Law in 2017*, 19 TENN. J. BUS. L. 21, 23 (2017).

[8] "An ACC provision . . . applies in either sequential-cause situations, where the first event sets in motion a chain of events that causes a second event that causes the loss, or concurrent-cause situations, where two or more causes of loss happen simultaneously to produce the same injury or damage." *Anti-concurrent Cause (ACC) Provision*, IRMI, https://www.irmi.com/term/insurance-definitions/anti-concurrent-cause-provision (last visited Oct. 19, 2020).

[9] Within this section, the Court follows the reasoning of *Leonard*, 499 F.3d 419, but applies New Mexico law.

Bus. L. 21, 32–33 (2017). The Illinois Court of Appeal's recent decision in *Bozek v. Erie Ins.
Group*, 46 N.E. 3d 362 (Ill. App. Ct. 2015), is demonstrative of this trend. *See also* 7 Couch on
Ins. § 101:39 ("It is widely recognized that the parties can contract out of this general causation
rule as long as their agreement does not violate public policy.") (quotation marks omitted). Next,
New Mexico statutes do not require that insurance policies reflect the efficient proximate causation
doctrine. *Leonard*, 499 F.3d at 435. In fact, New Mexico insurance law offers support to
Defendant's position. Under state law, all insurance providers are required to file "[a]ll policies,
certificates of insurance, notice of proposed insurance, applications for insurance, endorsements
and riders delivered or issued for delivery in this state and the schedules of premium rates
pertaining to them" with the superintendent. *See* N.M. Stat. Ann. § 59A-25-8(A). The state
superintendent must reject any policy form that contains "provisions that are unjust, unfair,
inequitable, misleading, deceptive or encourage misrepresentation of the coverage or that are
contrary to a provision of the Insurance Code or of a rule or regulation promulgated thereunder."
*Id*. § 59A-25-8(B). There is nothing in the record to indicate that the state superintendent did not
accept Defendant's ACC clause.

Additionally, other courts have allowed ACC clauses,[10] and some have endorsed using
ACC clauses to circumvent default causation rules like the efficient proximate cause doctrine.
*Leonard*, 499 F.3d at 434 (citing *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.,* 114 F.3d
731 (8th Cir. 1997); *Front Row Theatre, Inc. v. Am. Mfrs. Mut. Ins. Cos.,* 18 F.3d 1343, 1347 (6th
Cir. 1994)). Furthermore, most states that have considered the matter enforce ACC exclusion
clauses. *See* 4 David L. Leitner et al., Law and Practice of Insurance Coverage

---

[10] Fourteen jurisdictions have determined that ACCs are enforceable. They include Alabama, Alaska, Arizona,
Colorado, the District of Columbia, Iowa, Massachusetts, Minnesota, Nevada, New Hampshire, South Carolina,
Rhode Island, Texas, Utah, and Wyoming. Thirty jurisdictions, including New Mexico, do not have a clear rule of
law on ACC enforceability. Carback, *supra*, at 25.

LITIGATION § 52:37 (2007); 7 COUCH ON INS. § 101:45; Joseph A. Ziemianski et al., *Emerging Property and CGL Insurance Claims Trends*, 742 Practising Law Institute Litigation and Administrative Practice Course Handbook Series 251, 281 & n.111 (2006). Only Washington and West Virginia do not allow abrogation of the default rule via an ACC clause. Carback, *supra*, at 30. California and North Dakota require efficient proximate causation by statute. *Id*. at 29–30.

Lastly, New Mexico has a longstanding, favored policy of "freedom of contract." *See Gen. Elec. Credit Corp. v. Tidenberg*, 428 P.2d 33, 36 (N.M. 1967) ("public policy encourages freedom between competent parties of the right to contract, and requires the enforcement of contracts, unless they clearly contravene some positive law or rule of public morals") (citations omitted); *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 775 P.2d 233, 237 (N.M. 1989) (stating that "[g]reat damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties") (quoting *City of Artesia v. Carter,* 610 P.2d 198, 201 (N.M. Ct. App. 1980)). Therefore, because of the implications associated with interfering with one's right to freely enter contracts, along with the preceding arguments, the Court finds that the New Mexico Supreme Court would enforce the ACC clause.

The Court understands that this is not the most palatable conclusion. One might argue that fairness and equity point to eliminating the ACC clause because the policy is long and convoluted, rendering its readability to the ordinary person near impossible. But the Court sees the need to preserve individual liberty by honoring contracts freely entered. Carback, *supra*, at 35. "The aim of contract law, after all, is to fulfill—not desert—the expectations of parties." *Id.* "Pursuant to Article I of the United States Constitution, the  freedom of contract is an essential pillar undergirding American contract law." *Id*. *See* U.S. CONST. art. I, § 10, cl. 1 (declaring that no state

shall institute "Law[s] impairing the Obligation of Contracts"). Most state constitutions clearly protect this freedom. *Id*. Consequently, length and complexity are not justifications for throwing out provisions of a bargained for and freely entered contract. As the present ACC clause is clear and unambiguous, Plaintiffs had sufficient warning regarding what the policy covers and does not cover. Therefore, to adhere to the common-law "efficient proximate cause" doctrine would be to impermissibly rewrite the policy and dismiss the parties' expressed intent to the contrary. *See Kane v. Royal Ins. Co*., 768 P.2d 678, 685 (Colo. 1989).

The Court notes that Plaintiffs spend much time detailing the July 17th water line rupture as the original cause of the soil settlement, which in turn caused the building damage. (Doc. 41 at 19–21.) "This focus suggests that Plaintiffs intend to point to the [July 17 water line rupture]— theoretically a covered peril—as the actual cause of loss, invoking the 'efficient proximate cause' rule." *See YMCA of Pueblo v. Secura Ins. Cos*, No. 14-CV-00931-MJW, 2015 WL 535953, at *7 (D. Colo. Feb. 6, 2015).  But that rule does not help Plaintiffs, because the "Earth movement" exclusion expressly excludes a "loss caused directly or indirectly by any earth movement, whether natural or man-made." (Doc. 38-A at 7.) Also, as detailed above, the policy includes an ACC clause, which provides that "[s]uch loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id*. Similar ACC clauses have been held to apply to facts materially indistinguishable from this case. *See YMCA of Pueblo*, 2015 WL 535953, at *7; *Ark. Valley Drilling, Inc. v. Cont'l W. Ins. Co.,* 703 F. Supp. 2d 1232, 1241 (D. Colo. 2010) (holding no coverage under matching exclusions with ACC clause where an underground pipe burst, causing soil movement and damage to property). Therefore, even if Plaintiffs could show that their building damage fits within the definition of a "collapse," coverage is still barred because they have not shown that the covered peril (water leak) did not combine with

16

the excluded peril (earth movement) to damage the building. *See Anti-concurrent Cause (ACC)* *Provision*, IRMI, https://www.irmi.com/term/insurance-definitions/anti-concurrent-cause-provision (last visited Oct. 19, 2020). ("If any cause of loss falls within the terms of a policy exclusion that is accompanied by ACC language, the loss will be excluded, regardless of whether another unexcluded cause of loss qualifies as the 'proximate cause' under the jurisdiction's common law rules.").

### C.  The Earth movement section applies.

As stated, Defendant argues that the damage done to Plaintiffs' building is barred by the policy's "Earth movement" exclusion. The Court sides with Defendant, not because the "Earth movement" exclusion is unambiguous—the Court finds the policy exclusion less than a model of clarity—but because Plaintiffs did not raise an argument that allows a determination in their favor. Had Plaintiffs argued that the "Earth movement" exclusion was ambiguous and therefore should have been construed in favor of the reasonable expectations of Plaintiffs, the Court might have agreed. But Plaintiffs raised no such issue. Consequently, the Court will comply with "'the principle of party presentation,' which confines a court's analysis to issues that the parties have articulated, not topics of the court's own choosing." *JetAway Aviation, LLC v. Bd. of Cty. Comm'rs of Cty. of Montrose, Colo.*, 754 F.3d 824, 850 (10th Cir. 2014); *see also Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004) (noting the court's "duty to undertake an independent examination [of] . . . the dispute, as framed by the parties"); *Utah Poultry Producers Co-op. v. Union Pac. R. Co.,* 147 F.2d 975, 977 (10th Cir. 1945) (noting that "it is not necessary for us to decide this [matter], because this is not the issue as framed by the parties"); *United States v. Rodriguez*, No. CR 18-1568 WJ, 2020 WL 4003027, at *12 n.8 (D.N.M. July 15, 2020) (noting that because defendant did not challenge "either the scope or manner of the pat-down search either in his brief

or at the hearing[,] . . . the Court will not address those arguments"); *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (stating that courts ought to "rely on the parties to frame the issues for decision" and act as "neutral arbiters of matters the parties present"); *Arizona v. California*, 530 U.S. 392, 412–13 (2000) (instructing that "courts must be cautious about raising [issues] *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication").

As Plaintiffs did not question the ambiguity of the "Earth movement" exclusion, the Court concludes that the exclusion applies to the facts of this case. The provision bars coverage for "loss caused directly or indirectly by any earth movement, whether natural or man-made, including the following: . . . Earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Earth sinking doesn't include sinkhole collapse." (Doc. 38-A at 7.) Soil conditions include "contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface." (*Id*. at 8.) It is undisputed that "the observed building movement is likely a combination of site drainage issues and compressible soils." (Doc. 38-E at 3.) Plaintiffs acknowledge that "[t]he water caused the soil to collapse." (Doc. 41 at 1.) Geomat Consulting, moreover, opined "that the recent observed excessive movement of the southwestern portion of the building and the southern parking area is likely due to additional compression of the supporting soils due to water infiltration from the leaking waterline. . . ." (*Id*. at 1–2.) Robert Prindle agreed "that a material change in site conditions had occurred as a direct result of the rupture of the water pipe in the south parking lot, and that those changes directly affected the settlement of the south portion of the building." (*Id*. at 2.) The evidence is clear that the damage was caused by shifting soil, itself caused by the

underground water movement. Therefore, the damage to Plaintiffs' building falls under the "Earth movement" exclusion.

### D.  Plaintiffs' remaining claims are not well taken.

The remaining claims include bad faith and violation of N.M. Stat. Ann. § 59A-16-1 (Counts II–III). Because the breach of contract claim fails, the remaining claims predicated on that breach also fail. Since Plaintiffs had no coverage in this case, Defendant did not exercise bad faith or violate the UPA. *See, e.g.*, *Jackson Nat'l. Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992) (bad faith requires unfounded refusal to pay); *New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1031 (D.N.M. 1997) (dismissing insured's extra-contractual statutory claims upon finding that insurers had properly denied coverage); *Delgado v. Liberty Mut. Fire Ins. Co.*, CV No. 15-196 JCH/GJF, 2017 WL 6375623, at *9 (D.N.M. 2017) (insurer entitled to summary judgment on bad faith claim because it had no contractual duty to pay insured benefits under policy); *United Rentals Nw., Inc. v. Federated Mut. Ins. Co.*, CV No. 08-443 RB/DJS, 2009 WL 10666372, at *3 (D.N.M. June 5, 2009) ("Because Federated did not have a contractual duty to pay United Rentals under an insurance policy, Federated cannot be held liable for an unfair claims practice.").

Plaintiffs argue that "a claim against an insurer for its bad faith failure to properly investigate is independent of the question of whether there is coverage." (Doc. 41 at 23.) The Court finds this contention to run afoul of decades of New Mexico Supreme Court and the District of New Mexico precedent, as noted in the preceding paragraph. But even if Plaintiffs were correct, the Court would still determine that Defendant reasonably handled Plaintiffs' claims because it had legitimate reasons to deny coverage. Foremost, Defendant reasonably read and construed the contract.  The policy expressly excluded Plaintiffs' building damages under the "earth movement"

section, and the policy's "collapse" section did not apply. Next, Defendant conducted a reasonable investigation into Plaintiffs' claims. Though the exact date Plaintiffs filed their claim is not in the record, Defendants responded in a reasonable amount of time by conducting an in-person investigation a little more than one month after the accident occurred. (Doc. 38-E at 2.) *See Salopek Tr. for Salopek Family Heritage Tr. v. Zurich Am. Life Ins. Co.*, 446 F. Supp. 3d 886, 908 (D.N.M. 2020) (stating that "[n]othing in the record or in the law suggests that four months is an unreasonable period in which to investigate this claim"); *Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 896 (10th Cir. 1996) (holding that an insurer taking just over three months to evaluate a claim and tender a settlement offer was timely and not in bad faith). Lastly, Defendant did not just make its determinations on its own engineer's inspection, but it also utilized Plaintiffs' expert opinions. (*See* Doc. 38-E.) Ultimately, Plaintiffs argue that Defendant acted in bad faith because Plaintiffs do not agree with Defendant's coverage decision. Therefore, the Court holds that Defendant acted reasonably and did not act in bad faith in denying coverage. *United Nuclear Corp. v. Allendale Mut. Ins. Co*., 709 P.2d 649, 654 (N.M. 1985) (when there is a genuine issue regarding the payment of benefits, the insurer cannot be found to act in bad faith).

## IV.   Conclusion

In accordance with the foregoing, the court hereby GRANTS Defendant's motion for summary judgment on all of Plaintiffs' claims. The Court concludes that Plaintiffs do not have coverage under the policy's "Collapse" section, and the "Earth movement" exclusion applies.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED** as described in this Opinion, and Plaintiffs' action is **DISMISSED WITH PREJUDICE**.

_____

ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE